5

HAGOP T. BEDOYAN, CSB NO. 131285
KLEIN, DENATALE, GOLDNER,
 COOPER, ROSENLIEB & KIMBALL, LLP
4550 California Avenue, Suite 200
Bakersfield, California 93309
Telephone: (661) 395-1000
Facsimile: (661) 326-0418
Email: hbedoyan@kleinlaw.com

Proposed Attorneys for Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| In re: | Case No. 15-11079 |
|---|---|
| WEST COAST GROWERS, INC., | Chapter 11 |
| Debtor. | DC No. KDG-1 |
| | Emergency Hearing Date: March 26, 2015<br>Emergency Hearing Time: 3:00 p.m.<br>Place: United States Bankruptcy Court<br>    2500 Tulare Street, Fifth Floor<br>    Department B, Courtroom 12<br>    Fresno, California<br>Judge: Honorable W. Richard Lee |

**DECLARATION OF CHARLOTTE E. SALWASSER IN SUPPORT OF MOTION TO USE CASH COLLATERAL AND GRANT ADEQUATE PROTECTION**

I, CHARLOTTE E. SALWASSER, declare:

1. I am Vice President, Secretary, and Chief Financial Officer of WEST COAST GROWERS, INC. ("Debtor"), and Debtor's designated representative in this case. Debtor's management is in possession of Debtor and continues its management post-petition as "Debtor-in-possession." I am over the age of eighteen years and competent to testify. I make this declaration in support of Debtor-in-possession's (hereafter, "Debtor") *Motion to Use Cash Collateral and Grant Adequate Protection* ("the Motion").

2. Debtor's "Cash Collateral" consists of: (a) money on deposit ($0); (b) cash on hand (minimal); (c) accounts receivable ($1,183,610.76); and (d) inventory ($7,627,784 – resale value).

3FC9534                                    1

3. Debtor was incorporated on June 25, 1993. George Salwasser is Debtor's Chief Executive Officer and President. The shares of Debtor are owned 100% by Salwasser, Inc. The shares of Salwasser, Inc., are owned 50% by George Salwasser and 50% by me. I filed my personal Chapter 11 case on February 26, 2015. Salwasser, Inc. filed its Chapter 11 case on March 20, 2015.

4. Debtor commenced business on August 1, 1993 in Kerman, Fresno County, California, for the sole purpose of processing and distributing bulk California raisins in partnership with Mariani Packing Company. Originally known as Mariani Raisin, the company became a worldwide player in the raisin market with all of the processing and shipping done from its plant in Kerman, California. In August of 2004, Debtor parted ways with Mariani Packing Company and began processing raisins under the name West Coast Growers, Inc.

5. Debtor receives incoming raw fruit (raisins) from local growers and it cleans, processes, and ships them worldwide. Since 2004, Debtors processing volume has increased from a 3,400 ton average to an average of over 20,000 tons in 2014. In 2012, Debtor processed about 32,000 tons of raisins. Debtor currently employs 50 people on a full time basis year round, including three insiders, with a seasonal increase which is historically accommodated through the use of a temporary service.

6. Debtor's primary assets are its accounts receivable, raisin inventory, machinery and equipment, ingredients and packing materials, and bins and boxes. Debtor leases its real property from Salwasser, Inc. Before filing for relief under Chapter 11, Debtor's operations were financed primarily by Central Valley Community Bank ("CVCB"). Debts to CVCB are secured by a security interest in Debtor's personal property, including a junior lien against the Cash Collateral. A true and correct copy of the UCC-1 Financing Statements filed with the California Secretary of State by CBB is included in the *Exhibits to Motion to Use Cash Collateral and Grant Adequate Protection* ("Exhibits") as Exhibit "B."

7. Based on the loan and security documents with CVCB, Debtor believes CVCB has a blanket lien against the Cash Collateral and other personal property owned by Debtor.

Based on Prepetition Security Documents, loan statements, and the representations of CVCB, Debtor believes the debt owed to CVCB as of March 18, 2015, is $37,938,995.47.

8. CVCB's lien extends to the assets owned by George Salwasser and me, and Salwasser, Inc., as well as assets owned by Debtor. Debtor believes CVCB is fully or almost fully secured by collateral owned by Charlotte and George Salwasser, and Salwasser, Inc. CVCB has a junior-priority lien against the cash collateral. CVCB also has a lien against Debtor's equipment. Further, as will be discussed below, Growers are under-secured in Debtor's cash collateral. Because Growers have a senior-priority lien against Debtor's cash collateral, CVCB is factually unsecured in the cash collateral.

9. Debtor does business with about 58 growers (the "Growers"). Debtor believes the Growers hold a producers lien against their raisins delivered in 2014. Debtor believes it is a "producer" as defined in the Producer's Lien law, and the Producers Lien attaches to the product Growers delivered to Debtor, and the product's sale proceeds. Debtor believes the Growers' Producers Lien is a higher priority lien than CVCB's security interest. Based on Debtor's *Schedule D – Creditors Holding Secured Claims*, the debt payable to Growers is about $12,958,885.20 (non-insider Growers only; including Salwasser, Inc., the debt is $15,006,382.13).

10. Debtor believes Growers were under-secured on the petition date. Growers' raisin security is about $7,627,784 (resale value), which represents 3,514.64 tons of raisins at Debtor's plant and at the port, and about $1,183,610.76 in accounts receivable. Debtor intends to continue to process the inventory, sell the product, and generate and collect accounts receivable. Growers' lien will continue to attach to the raisins in inventory, and to the raisin-sale proceeds. Growers' liens will not attach to new inventory delivered by other farmers post-petition, because those farmers' liens will attach to the new crop.

11. Debtor also owes a debt to growers that delivered raisins in 2012 and 2013. Because Debtor does not have any 2012 or 2013 raisins in inventory, and none of the accounts receivable arise from the sale of 2012 or 2013 raisins, Debtor believes unpaid raisin growers

who delivered raisins in 2012 and 2013 are unsecured. Those growers are listed on Debtor's *Schedule D*, with the year's crop notated. Some growers are owed debts for multiple years.

12. Debtor expects to move quickly in proposing a plan of reorganization, but Debtor cannot determine with certainty the timetable for filing a plan of reorganization. Debtor intends to sell its business as a going concern as a part of its case. In the interim, Debtor seeks the Court's authorization to use Cash Collateral from the petition date through the date of confirmation of the Debtor's Plan of Reorganization. However, to avoid immediate and irreparable harm, pending a final hearing on the Motion, Debtor requests interim authorization to use cash collateral on a semi-monthly basis as set forth in the budget attached as Exhibit "A" to the Exhibits (the "Budget").

13. Debtor requests interim authorization to use $199,991 from March 22 through March 28 (with a 10% variance), and $278,8756 from March 29 through April 4 (with a 10% variance), and $204,941 from April 5 through April 11 (with a 10% variance), and $224,121 from April 12 through April 18 (with a 10% variance), through a final hearing on the Motion as described in the Budget. Each item on the Budget was carefully considered and deemed by Debtor to be necessary to Debtor's continued operation. Before a final hearing on this Motion, Debtor will submit budgets covering the period beyond the initial period, through the date of confirmation of the Debtor's Plan of Reorganization. Debtor will request continued use at the final hearing on the Motion.

14. The immediate and irreparable harm that will befall Debtor if it does not obtain the use of Cash Collateral is (a) Debtor will be unable to clean, process, and ship the raisins in inventory, (b) Debtor will be unable to pay its employees, and (c) Debtor will be unable to pay its utility bills, all of which would cause immediate crises to Debtor's ability to maintain its business, and effectively shut Debtor down.

15. Debtor offers Growers adequate protection for using its cash collateral. Debtor will provide Growers with adequate protection by caring for and maintaining the Growers' inventory collateral, including continuing to process and sell the raisins in inventory, which

will generate accounts receivable from which to pay Growers. Debtor will pay all funds over the expenses noted in the Budget to Growers on account of their liens.

16. Debtor will provide CVCB with adequate protection by paying the Growers' senior-priority lien against cash collateral; and providing monthly financial reports to CVCB, and allowing reasonable inspection of its operations, if requested by CVCB.

17. The foregoing statements are within my personal knowledge and I can testify competently thereto if called as a witness.

I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: March  23 , 2015

*Charlotte E Salwasser*
CHARLOTTE E. SALWASSER

ORIGINAL