9

HAGOP T. BEDOYAN, CSB NO. 131285
KLEIN, DENATALE, GOLDNER,
 COOPER, ROSENLIEB & KIMBALL, LLP
4550 California Avenue, Suite 200
Bakersfield, California 93309
Telephone: (661) 395-1000
Facsimile: (661) 326-0418
Email: hbedoyan@kleinlaw.com

Proposed Attorneys for Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| In re: | Case No. 15-11079 |
|---|---|
| WEST COAST GROWERS, INC., | Chapter 11 |
| Debtor. | DC No. KDG-1 |
| | Emergency Hearing Date: March 26, 2015<br>Emergency Hearing Time: 3:00 p.m.<br>Place: United States Bankruptcy Court<br>    2500 Tulare Street, Fifth Floor<br>    Department B, Courtroom 12<br>    Fresno, California<br>Judge: Honorable W. Richard Lee |

**DECLARATION OF AMY BURGESS IN SUPPORT OF MOTION TO USE CASH COLLATERAL AND GRANT ADEQUATE PROTECTION AND RESPONSE TO <u>TERRY CRAWFORD'S DECLARATION</u>**

I, AMY BURGESS (also known as Amy Bailey), declare:

 1. I am controller of WEST COAST GROWERS, INC. ("Debtor"). I am over the age of eighteen years and competent to testify. I make this declaration in support of Debtor-in-possession's (hereafter, "Debtor") *Motion to Use Cash Collateral and Grant Adequate Protection* ("the Motion"), and in response to Central Valley Community Bank /Terry Crawford's declaration. In summary, as detailed below, I disagree with many of Mr. Crawford's comments and calculations, and affirm the Budget submitted with the Motion is conservative and reasonable, and does not overstate income and/or understate expenses.

2. In paragraph four of his declaration, Mr. Crawford avers:

> During our discussion, Ms. Bailey informed us that the Debtor had only 2,800 tons of inventory on hand, which is far less than the 3,356 tons indicated in the moving papers. She further indicated that all 2,800 tons was NTS raisins (subject to a full inventory inspection) which includes 1,100 tons of midgets (small raisins) and 400 tons of DOV type product. This leaves only 1,300 tons of unprocessed fruit to meet existing contracts. Not included in that figure is 400 tons of dipped raisins that Ms. Bailey indicated was contracted by Gilster. Also not included were 600 tons ofNTS raisins at Sunbeam Raisins that have not been delivered but are reflected on the grower payable list.

Response: I believe Mr. Crawford's representation is not accurate. I told Mr. Crawford Debtor had 2,837 tons of contracted sales left to fill: 1,837 tons for CalDak and approx 1,000 tons for Gilster. I then represented that Debtor had not oversold its inventory position, and had an approximately equal amount of fruit as it did contracts; however the condition of the fruit after grading it out from raw condition had caused a shortage in useable fruit. This is business as usual in processing raisins. When CVCB placed a moratorium on tonnage purchases, Debtor was limited to purchasing 10,000 tons of raw product from growers, and then Mr. Salwasser and Mr. Crawford promised CalDak that they could sell 10,000 tons of product. At the very best scenario, shrink alone on standard processing would leave Debtor 800 - 1,000 tons short based on shrink from cleaning the product. Added to this, a natural grown field product is fickle in sizing nature. When the product was contracted for grower purchase there was no way to know that it would grade out in percentages of large and midget sized raisins as it did. This too is business as usual. Regardless, Debtor did not sell more than Debtor purchased. The roll of the "mother nature" dice dealt us smaller raisins and the grading caused the need for blending.

///

///

///

///

///

3. In paragraph five of Mr. Crawford's declaration, he avers:

> During our meeting, Ms. Bailey and Mrs. Salwasser stated that the Debtor has forward sales contracts (contracts which call for deliveries in the future) with CalDak for 1,800 tons and with Gilster for 900 tons. Ms. Bailey indicated that the Gilster contract(s) call for future deliveries through December, 2015. Prior to this time, Ms. Bailey and Mrs. Salwasser had continually represented to the Bank that their contracts would be fully performed by the end of May, 2015 or the beginning of June, 2015 at the latest.

My response: We did not "represent" that Debtor would be done packing by any specific date. All conversations—one of which is in writing in an email dated December 5, 2014, attached hereto —were that Debtor wanted to have the sale of the plant completed as soon as possible. Since I started working on the sale in November 2014, it has been Debtor's goal to make it happen as quickly as possible. The date of March 31, 2015 came from me as a tentative sale date represented by Debtor's potential buyer as the date they would like it to be complete, and was represented as a "projected" sale date.

4. In paragraph six of Mr. Crawford's declaration, he avers:

> Ms. Bailey and Mrs. Salwasser informed us during the meeting that the Debtor has approximately 150 tons of fruit that needs to reconditioned and that the cost of this process is approximately $225/ton. Since this inventory was purchased at the RBA field rate for 2014 of $1,700 per ton, this equates to a cost of the inventory which needs to be reconditioned of $1,925/ton or $.9625/lb.

My response is: This statement is incorrect. The value of the raisins is not increased by the cost of the reconditioning. All fruit that has undergone a reconditioning process is then paid at the base rate with no bonuses allowed, plus the grower pays the reconditioning fees out of their own proceeds. The base rate for 2014 is $1,582.00/ton minus $225.00/ton = $1,357.00/Ton or $0.6785/lb., not $1,925.00/ton or $0.9652/lb. There is no additional cost to West Coast Growers, as the grower is charged for the process. And finally, if it is not reconditioned it is worth zero. This applies to the final sentence in Mr. Crawford's paragraph 7 as well: the reconditioning does not worsen any loss factor; to the contrary, it would add lower cost useable fruit to the blend bringing down the overall average fruit cost.

5.  In paragraph seven of Mr. Crawford's declaration, he avers:

> With this current mix of inventory, the Debtor would need to blend the DOV raisins on a 4/1 (good/bad) ratio to meet the contract requirements. At a cost of $1,725/ton or $.86/lb., plus $.23/lb. for processing expenses, the Debtor would need to sell the raisins at a minimum of $1.08/lb just to break even. According to Ms. Bailey, the average price of the existing contracts is $1.06/1b., so the Debtor will lose money on every pound of raisins it proposes to deliver. Based on the foregoing, the Debtor is losing approximately $1,200 for every shipped container. This would worsen when the reconditioned fruit (discussed in Paragraph 6, above) is added to the mix due to the processing cost of $225 per ton or $.1125 per lb.

My response is: I am unclear where the number $1,725.00/ton originated. Based on the actual numbers for 2014 crop, the actual average price per ton is $1,687.51 or $0.84/lb - which represents $0.02/lb reduction in cost from the numbers stated on Mr. Crawford's declaration. (*See* attached worksheet showing the computation of actual averages per ton for 2014 crop, Exhibit "C.") As for additional tonnage from Sunbeam Raisin Company, those raisins are delivered to West Coast Growers, Inc. already in a pre-graded form. Because they are pre-graded, they do not require the same labor steps through our process and are ready to go straight to the processing line. But most important, these raisins have no shrink. All the shrink occurred at Sunbeam's facility during their pre-grading process. This reduces the processing costs on this fruit by $0.06/lb at a standard shrink rate of 8%; plus reduced processing costs of approx $0.01/lb in labor for skipping the pre-grade process. Therefore, even at full premium rate for Sunbeam fruit at 1750.00 or 0.875/lb, the actual cost minus the $0.07/lb savings equals 0.805/lb or $1,610.00/Ton which is less expensive than the current inventory. Blending this fruit occurs at a one-to-one basis—not four-to-one as described by Mr. Crawford. This 600 ton equates to 1200 ton output with what Debtor currently has available. The cost would be:

 600 tons x $1687.51/ton = 1,012,506.00
+600 tons x $1610.00/ton = 966,000.00
 Total = 1,978,506.00 divided by 1200 tons = weighted average of $1648.75/ton or $0.8243/lb

Using these actual calculations, rather than estimates, yields another $0.016/lb in savings from originally stated numbers. And in fact, purchasing these additional raisins in pre-grade form actually lowers the average cost of fruit.

6.  In paragraph eight of Mr. Crawford's declaration, he avers:

> I have reviewed the Debtor's proposed cash collateral budget and do not believe that it is accurate in several very material respects. This is how the cash flow for the proposed operation would actually work, excluding any reconditioned fruit:
>
> Cash Receipts: $ 400,000 (represents 188.68 tons (37.74 T/day)@ $1.06 per pound)
>
> COGS (grower payable): ($320,754) (188.68 tons@ $1,700/T)
>
> Gross Profit: $ 79,246
>
> Less Expenses: ($ 86, 792) (@ $.23/lb. or $460/T)
>
> Net Profit (Loss): ($ 7,546)

My response: I prepared the Budget included with the Motion. The Budget estimates the projected cash flow. I used $400,000.00 for income because it is a low estimate of guaranteed cash incoming over the next few weeks. There is a great possibility that actual incoming cash will be greater than $400,000.00, but much is beyond Debtor's control, such as the dependability of the US Postal Service or our customers' ability to move their export containers in a timely manner. Mr. Crawford's calculation is not accurate. In general terms, he used the highest purchase price per pound, but the lowest sale price per pound. There are much more complicated calculations involved and generalizing as he has done, is simply a misrepresentation of what may or may not occur. For instance if Debtor blended straight one-to-one fruit as described in my rebuttal to paragraph 7, the numbers would be skewed in a much different direction and yield a profit of $2,121.85 weekly after paying growers and expenses. However, this would also be unfair. There are far too many factors involved to use generalized calculations to determine profit/loss on a weekly basis. Raisins are a bulk commodity. It is by no means a pound for pound expense business.

7.  The foregoing statements are within my personal knowledge and I can testify competently thereto if called as a witness.

I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: March 26, 2015

AMY BURGESS

***From:*** <u>Amy Bailey</u>
***Date:*** 12/5/2014 6:58:31 AM
***To:*** <u>Terry Crawford</u>
***Subject:*** Cash Flow

As requested, a brief explanation of the cash flow statement:

First, it is important to note that the entire grower payable load was included in the original version of the cash flow. This is of course to depict the worst possible scenario. Historically and realistically however, this is not how the cash will actually flow.

As is the case in the raisin industry in general the growers deliver the fruit, are then paid a portion of their monies up front, and are then scheduled to receive the remainder of their monies over the next several months. The schedule as it was listed on the original cash flow reports indicated three lump sum payouts as per the RBA schedule.

In actuality, this lump sum payment deadline and requirement only applies to RBA signatory growers, which for 2014 crop make up only approximately 6% of our entire grower base. All of the other growers are to be paid at the discretion of West Coast Growers, as agreed to and evidenced by grower signature on our individual grower contracts previously provided to the bank. (attached sample again here - please note comments in pricing section.) This being the case, the inclusion of all of the grower payables in a four month period is a misrepresentation as to how the growers are actually paid.

In addition to this - it is historically the case that some of the growers choose not to take their proceeds up front for various reasons (tax implications, social security restrictions, harvest costs, investment savings, personal reasons, etc.) This percentage of growers, traditionally 30%, will defer payment on their money until later in the year (2015) and call for it as they need or want it. Based on our 2014 crop projection - the amount deferred past the cash flow projected period would be approximately 4,500,000.00. This amount should be considered exempt from the cash flow statement based on the time frame.

Finally, no matter what the projected cash flow indicates, the reality of paying the growers is planned NOT to exceed the incoming cash for the months period. For example - if the incoming cash is 3,000,000.00 then West Coast Growers will pay its expenses first, the cash flow to Salwasser Farms and Salwasser Inc. second and the remainder of the cash will be paid to the growers. Although the growers may not appreciate the scheduling in

this manner, and will cause a giant problem if they are not paid as they request, technically they are bound to accept our payment schedule as per their signed contracts (example attached.)

Finally, the question as to how to handle the remaining grower balance as of the projected sale date of March 31, 2015.  As of this date, West Coast will still have an inventory balance and contracted sales to complete and ship.  As a part of the agreement with any potential buyer, the new owner will assume that inventory balance, assume the contracts and commitments, and assume the outstanding grower payable associated with the tonnage acquired.  The new owner will then complete packing and shipping of acquired inventory and use proceeds of those sales to pay the outstanding grower payables.

Please contact me if there are any questions.

Amy

| 2014 Contracts | | | |
|---|---|---|---|
| Grower Name | Delivered Tons | Grower Payable | Average |
| 5T Farms | 135 | 225,696.29 | 1,676.10 |
| Alberta Otto - Jared | 9 | 15,376.89 | 1,675.04 |
| Alberta Otto - Heinrich | 7 | 12,253.99 | 1,676.33 |
| Alberta Otto - Deal | 8 | 13,080.91 | 1,674.46 |
| Ablerta Otto - Muellar | 8 | 13,334.91 | 1,666.86 |
| Alex Kobets | 260 | 442,000.00 | 1,700.00 |
| Alfred Duran | 33 | 53,366.64 | 1,620.07 |
| Amarjit Kaur (Sodi) | 21 | 34,431.86 | 1,625.75 |
| Anthony or Joanne Ayerza | 40 | 69,075.78 | 1,712.34 |
| Antoinette Brager | 10 | 17,268.94 | 1,726.89 |
| Ara Karkazian | 35 | 60,018.51 | 1,709.39 |
| Assemi & Sons, Inc. | 229 | 371,648.82 | 1,621.66 |
| Biola Community Services | 2 | 2,522.54 | 1,681.69 |
| Brian Neuwirth | 83 | 142,614.48 | 1,715.56 |
| Bryan Ambrosini Farms | 50 | 84,510.15 | 1,703.54 |
| Cameron Wulf | 39 | 63,024.24 | 1,634.62 |
| Four Bar C Farms | 421 | 746,556.13 | 1,773.29 |
| Christie Valorosi Trustee | 26 | 43,660.71 | 1,706.00 |
| Christie Willet | 43 | 71,765.39 | 1,677.35 |
| Christy Schneider | 1 | 2,139.12 | 1,691.00 |
| Daniel Cunningham | 250 | 425,000.00 | 1,700.00 |
| Dennis Caprioglio | 19 | 31,550.84 | 1,681.13 |
| Dennis Caprioglio | 8 | 14,786.64 | 1,760.00 |
| Anne Caprioglio | 3 | 4,750.16 | 1,696.18 |
| Anne Caprioglio | 6 | 10,478.46 | 1,674.98 |
| Don and Susan Hornor | 1400 | 2,380,000.00 | 1,700.00 |
| Ed or Tammy Kerber | 85 | 134,918.66 | 1,581.73 |
| Ed or Tammy Kerber | 42 | 56,646.05 | 1,346.92 |
| Gerald or Theresa Neuwirth | 81 | 140,617.23 | 1,743.82 |
| Gerald or Theresa Neuwirth | 182 | 316,694.41 | 1,735.63 |
| Goerge or Tanya Goosev | 38 | 60,390.07 | 1,600.16 |
| Good Earth | 65 | 109,912.76 | 1,679.38 |
| Guadalupe or Janie Renden | 6 | 5,185.74 | 882.68 |
| Hagopian Enterprises, Inc. | 72 | 121,672.94 | 1,689.90 |
| Hagopian Enterprises, Inc. | 262 | 439,651.02 | 1,679.38 |
| Harriet Vawter - Heinrich | 66 | 112,865.07 | 1,717.89 |
| Harriet Vawter - Deal | 70 | 120,481.04 | 1,716.25 |
| Harriet Vawter - Muellar | 71 | 115,616.19 | 1,626.11 |
| Jared Vawter | 83 | 139,574.54 | 1,685.68 |
| Jeff or Marla Reinhardt | 32 | 55,229.12 | 1,712.00 |
| Jeff or Marla Reinhardt | 21 | 34,929.72 | 1,675.65 |
| Jeremy Novielli | 16 | 24,948.79 | 1,525.36 |
| Jim Tousounis | 36 | 61,914.90 | 1,704.71 |
| JM Lasgoity | 191 | 321,363.52 | 1,684.01 |
| Johal Bros. Farming | 100 | 160,773.96 | 1,602.95 |
| Jorge Javier Perez | 2 | 3,486.01 | 1,732.18 |
| K&G Enterprises | 27 | 45,409.57 | 1,684.80 |
| KE Bachant | 9 | 15,008.08 | 1,667.56 |
| Kenneson Farms | 1701 | 2,865,262.10 | 1,684.46 |
| Kleins Biola Ranches | 49 | 83,046.95 | 1,679.87 |
| Laub Ranches, Inc. | 404 | 668,963.70 | 1,657.46 |

| Lincoln Grantor Farms | 95 | 162,678.87 | 1,710.40 | |
|---|---|---|---|---|
| Manning Avenue Pistachios | 400 | 683,549.01 | 1,709.11 | |
| Manya Latimer | 35 | 59,246.55 | 1,683.19 | |
| Mark Hagopian | 24 | 40,557.64 | 1,689.90 | |
| Michael A Logoluso, Jr | 44 | 73,955.12 | 1,679.56 | |
| Miller Trustees | 5 | 8,669.73 | 1,710.39 | |
| Nick Kralevich | 8 | 14,161.51 | 1,683.89 | |
| Pao Lee | 16 | 25,136.69 | 1,610.40 | |
| Pat Connolly | 110 | 184,741.32 | 1,677.11 | |
| Pat Connolly | 58 | 96,984.48 | 1,669.45 | |
| Richard Geringer | 247 | 424,986.66 | 1,718.99 | |
| Richard Helmuth | 6 | 10,954.37 | 1,693.65 | |
| Richard Roberts | 13 | 22,232.17 | 1,684.06 | |
| Robert or Carol Peterson | 100 | 168,556.05 | 1,691.51 | |
| Robert or Joyce Schneider | 131 | 216,234.28 | 1,647.89 | |
| Sarbjit or Jaswinder Sran | 55 | 93,242.27 | 1,706.55 | |
| Sarbjit or Jaswinder Sran | 78 | 129,467.71 | 1,659.95 | |
| Sarbjit or Jaswinder Sran | 142 | 232,522.75 | 1,641.08 | |
| Schafer & Schafer | 38 | 62,628.55 | 1,651.27 | |
| Steve Reinhardt | 21 | 36,435.91 | 1,706.60 | |
| Sumio Kubo | 7 | 12,516.32 | 1,695.98 | |
| Ty Bellach | 63 | 105,880.63 | 1,693.53 | |
| Vernon or Carloyn Reitz | 161 | 276,219.63 | 1,716.43 | |
| Victoria Garza | 30 | 49,315.47 | 1,649.15 | |
| WESPAK, Inc. | 80 | 136,000.00 | 1,700.00 | |
| William Haupt | 8 | 12,889.65 | 1,712.00 | |
| | **8833** | **14,905,237.88** | **1,687.51** | Weighted Average Total |

| Don and Susan Hornor - ZANTE | 75 | 141,687.30 | 1,897.59 | ZANTE |
|---|---|---|---|---|
| Sunbeam Raisin Co. | 800 | 1,360,000.00 | 1,700.00 | Not complete |

9